UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICK ODELL,

                    Plaintiff,                                          Hon. Wendell A. Miles

v.                                                                            Case No. 5:05-CV-37

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____/


## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  Section

405(g) limits the Court to a review of the administrative record, and provides that if the

Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit

proposed findings of fact and recommendations for disposition of social security appeals, the

undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 54 years of age at the time of the ALJ's decision.  (Tr. 17).  He successfully completed high school, as well as "some" college, and worked previously as a store clerk, a construction worker, and an accounting technician.  (Tr. 76, 127).

Plaintiff applied for benefits on August 21, 2002, alleging that he had been disabled since November 1992, due to an adjustment disorder.  (Tr. 44-46, 75).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 26-43).  On April 8, 2004, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Dr. Norman Abeles.  (Tr. 122-51).  In a written decision dated May 28, 2004, the ALJ determined that Plaintiff was not disabled.  (Tr. 16-22).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 5-8).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On February 24, 1993, Dr. J. Blake Casher reported to Plaintiff's employer that he was treating Plaintiff for depression and was "recommending a medical leave of absence for him for an indefinite period of time while he continues in my care."  (Tr. 117).

Plaintiff subsequently left his job, but a September 21, 1994 letter from Michigan Rehabilitation Services indicates that Plaintiff declined to participate in vocational rehabilitation counseling.  (Tr. 88).

On August 27, 2002, Plaintiff completed a questionnaire regarding his activities.  (Tr. 66-69).  Plaintiff reported that he cooks, washes dishes, cleans, does laundry, shops, and watches television.  (Tr. 67-68).

On August 29, 2002, Sheila Fitzgibbons, one of Plaintiff's friends, completed a questionnaire regarding Plaintiff's activities.  (Tr. 60-65).  She reported that Plaintiff drives, cooks, cleans, shops, fixes things, and cares for his personal needs.  (Tr. 62).

On September 27, 2002, Plaintiff participated in a consultive examination performed by Steve Geiger, Ph.D.  (Tr. 110-14).  Plaintiff reported that he was hospitalized in 1992 for a "break down."[1]  (Tr. 110).  Plaintiff claimed that he cannot work because he cries and gets "overwhelmed." He reported that he began experiencing depression in his late 30s and later experienced difficulties when a former supervisor began making unwanted sexual advances towards him.  *Id.*  Plaintiff also reported that he had experienced "a couple of panic attacks," the last one occurring four years ago. (Tr. 111).  Plaintiff stated that "he is not anxious when he is in the woods, and not around stress," but "when he tries to work he gets very anxious."  *Id.*

Plaintiff reported that he spends his time walking his dog, watching television, and playing a guitar.  (Tr. 112).  Plaintiff reported that he takes care of his own shopping, laundry, housekeeping, meal preparation, and financial arrangements.  The doctor reported that Plaintiff was "cooperative, verbal, friendly and engaged in the assessment process."  *Id.*  Plaintiff appeared to be

---

[1] The record contains no evidence of any such hospitalization.

"depressed and emotionally flat," but the results of a mental status examination were otherwise unremarkable. (Tr. 112-13). Plaintiff stated that he was "not interested in taking medication for his psychological difficulties." (Tr. 113). While expressing an interest in psychotherapy, Plaintiff indicated that because he did not have insurance he would probably be unable to obtain such treatment. The doctor instructed Plaintiff to explore the possibility of obtaining treatment from community mental health services. *Id.* Dr. Geiger diagnosed Plaintiff with: (1) major depression, recurrent, moderate and (2) post-traumatic stress disorder, chronic. (Tr. 114). The doctor rated Plaintiff's GAF score as 53[2]. *Id.*

On October 17, 2002, Dr. Thomas Tsai completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 96-109). Determining that Plaintiff suffered from a depressive disorder and post-traumatic stress disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 97-105). Dr. Tsai determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 106). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, experienced moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. *Id.*

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Dr. Tsai also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 92-93). Plaintiff's abilities were characterized as "moderately limited" in seven categories. With respect to the remaining 13 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.* The doctor also reported that Plaintiff was capable of performing "unskilled work." (Tr. 94).

At the administrative hearing Plaintiff testified that his mental impairments prevented him from working. (Tr. 128-29). Plaintiff reported that he prepares his own meals, does laundry, vacuums, shops, watches television, and visits with friends and family "from time-to-time." (Tr. 130-31). Plaintiff also reported that he paints with watercolors as a hobby. (Tr. 131). Plaintiff reported that he typically spends his days walking his dog and looking for cans/bottles to return for deposit. (Tr. 132).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a

---

[3]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1420(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

## B.  The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) post-traumatic stress disorder and (2) anxiety/depression.  (Tr. 21).  The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 17).  The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations.  (Tr. 19-20).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1.  The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can frequently lift 25 pounds and occasionally lift 50 pounds, (2) he can stand, walk, and sit for six hours of an 8-hour shift, (3) he can only perform work "involving one, two, or three step instructions and simple, unskilled work," (4) he cannot perform work which requires him to read, compute/calculate, problem solve, or reason, (5) he is limited to jobs in which he can be late or absent once per month, (6) he can only perform work which involves minimal contact with and minimum direction from a supervisor, (7) he is limited to work which requires only brief and superficial contact with the public, (8) he can perform only low stress jobs, and (9) he cannot perform jobs with production quotas. (Tr. 19).  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that

a significant number of jobs exist in the national economy which Plaintiff could perform, his

limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding

supported by substantial evidence that a claimant has the vocational qualifications to perform

specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587

F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition

or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See*

*Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt

to determine whether there exist a significant number of jobs which a particular claimant can

perform, his limitations notwithstanding.  Such was the case here, as the ALJ questioned vocational

expert Dr. Norman Abeles.

The vocational expert testified that there existed approximately 13,800 jobs which

an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 144-45).

This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923

F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform

constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence

of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a.  The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ "committed legal error by not affording appropriate

weight to the medical evidence of record."  The Court disagrees and finds that the ALJ properly

assessed the medical evidence in this matter.

Plaintiff asserts that the ALJ failed to afford sufficient weight to the opinions expressed by Dr. Tsai.  First, because Dr. Tsai never actually examined Plaintiff his opinion is entitled to no special deference.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989).  Furthermore, the Court discerns nothing in the reports completed by Dr. Tsai which is inconsistent with the ALJ's RFC determination.  The doctor concluded that Plaintiff was moderately limited in several areas, but was nonetheless capable of performing unskilled work.  This conclusion is supported by the evidence of record and is also consistent with the ALJ's RFC determination.

b.   The ALJ Properly Assessed Plaintiff's Subjective Allegations

Plaintiff asserts that the ALJ "committed legal error by not making a credibility determination regarding the Plaintiff's testimony."  The ALJ did, in fact, assess Plaintiff's credibility, concluding that his "allegations of inability to work due to his limitations are not credible in light of the record as a whole."  (Tr. 18).

As the relevant Social Security regulations make clear, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).  As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective

allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, none of the individuals who have treated or examined Plaintiff (or even reviewed the medical evidence) have expressed the opinion that Plaintiff is disabled and, furthermore, the record contains no medical evidence suggesting that Plaintiff's condition is disabling in severity. (Tr. 18). As the ALJ also correctly observed, Plaintiff "seems to have shown some improvement through conservative treatment such as medications which he currently refuses to take." The ALJ also noted that Plaintiff's range of activities is inconsistent with a claim of total disability. Finally, as the ALJ reported, "[o]ther than for his alleged 1992 hospitalization, the claimant has never been hospitalized due to his conditions and has failed to take full advantage of some treatment options available." *Id.* In sum, there exists substantial evidence to support the ALJ's credibility determination.

11

c.   Plaintiff's Condition does not Satisfy Section 12.04 of the Listing of Impairments

Plaintiff next asserts that his impairments satisfy Section 12.04C of the Listing of Impairments.  This particular provision provides as follows:

> 12.04  Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.   Repeated episodes of decompensation, each of extended duration; or
>
> 2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

First, Plaintiff has not established that his condition satisfies the initial requirement of subsection C which mandates that his "symptoms or signs" be "attenuated by medication or psychosocial support."  As the ALJ correctly observed, Plaintiff has failed to take advantage of the treatment options available and has expressed a refusal to take medication which may, in fact, help

his condition.  The Court recognizes that Plaintiff may lack the means (e.g., insurance coverage or

financial resources) to pay for treatment himself, however, as Dr. Geiger recommended to Plaintiff

there exist various opportunities for individuals such as Plaintiff to obtain treatment free of charge.

Nevertheless, there exists no evidence that Plaintiff has ever made *any* attempt to avail himself of

such opportunities.  Finally, the record contains no evidence suggesting that Plaintiff's condition

satisfies any of the other requirements of subsection C.  The ALJ's conclusion that Plaintiff's

impairments failed to satisfy this (or any other) section of the Listing of Impairments is supported

by substantial evidence.

### d.   The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ "committed legal error by failing to clarify the grossly

erroneous vocational testimony."  Specifically, Plaintiff asserts that the ALJ improperly relied on the

vocational expert's testimony because such was inconsistent with information contained within the

Dictionary of Occupational Titles (DOT).

As noted above, the vocational expert testified that there existed approximately

13,800 jobs which a person with Plaintiff's RFC could perform.  (Tr. 144-45).  Specifically, the

vocational expert identified the following types of jobs: order clerk, inventory clerk, billing clerk,

office building attendant, security monitor, and telephone clerk.  (Tr. 145).  The vocational expert

testified that his testimony was "consistent with" the DOT.  *Id.*  First, Plaintiff has failed to establish

that the vocational expert's testimony is contradicted by the DOT. Moreover, as Defendant correctly

notes, whether the vocational expert's testimony is consistent with the DOT is irrelevant because

"the ALJ and consulting vocational experts are not bound by the [DOT] in making disability

determinations because the Social Security regulations do not obligate them to rely on the [DOT's]

classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision

conforms to the proper legal standards and is supported by substantial evidence.  Accordingly, the

Court recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of

Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure

to file objections within the specified time waives the right to appeal the District Court's order.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  December 27, 2005                             /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge